IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| APACHE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO._____ |
| | § | |
| MOTION PICTURE LICENSING | § | |
| CORPORATION, | | |
| | § | |
| Defendant. | § | |

## APACHE CORPORATION'S COMPLAINT
## AND REQUEST FOR DECLARATORY JUDGMENT

Plaintiff Apache Corporation ("Apache") brings this Complaint and Request for Declaratory Judgment ("Complaint") against Defendant Motion Picture Licensing Corporation ("MPLC").

## I.  NATURE OF SUIT

1.  Apache, a publicly-owned oil and gas exploration and production company headquartered in Houston, Texas, seeks a declaration that Apache employees and contractors on manned offshore platforms may view movies aired via satellite programming without violating the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*  MPLC, which claims to be a copyright licensing entity, has threatened to sue Apache for copyright infringement.

2.  Apache owns and operates manned and unmanned oil and gas production platforms stationed around the world.  More than half of these platforms are located outside United States territorial waters.  Germane to this Complaint, Apache operates 138 manned platforms in the Gulf of Mexico.  Each platform is manned by no more than five Apache employees and a similarly small number of independent contractors, who usually work seven-

day shifts "on" and seven-day shifts "off."  These platforms typically have at least one television capable of showing satellite programming, which Apache employees and contractors may watch during break periods.

3.     In November 2010, MPLC contacted Apache and demanded that it pay for a license from MPLC that permits Apache's manned-platform employees and contractors to watch movies aired via satellite programming or digital video discs ("DVDs").  MPLC insisted that the U.S. Copyright Act, 17 U.S.C. § 101 *et seq*., obligated Apache to obtain a license, and that "unlicensed performances of Videos on offshore oil rigs" owned by Apache violated federal law, and that "failure to comply may give rise to the offender's conduct being denominated by a court as 'willful.'"  MPLC then sought payments in excess of $75,000 annually for a license.

4.     Apache responded to MPLC's letter, and thereafter Apache and MPLC continued discussions in a series of letters and emails.  Apache made MPLC aware that it had in the past and intended in the future to fully comply with copyright law in all respects, but Apache disagreed with MPLC's legal and factual assumptions, which do not provide a basis for its claims of copyright infringement.  MPLC rejected Apache's position and continued to demand that Apache purchase a license.

5.     Then, on August 31, 2012, MPLC informed Apache that it was rescinding its license offer, reserving its legal and equitable rights regarding Apache's alleged copyright infringement, and holding Apache "fully accountable" for its actions.  On September 7, 2012, when Apache sought more information about MPLC's position, MPLC's General Counsel responded: "too late."

6.     As evidenced by the foregoing, an actual controversy exists between the parties, given MPLC's multiple demands that Apache pay for a license and its threats of legal action

against Apache for copyright infringement.  Accordingly, Apache asks the Court to declare that Apache's actions do not violate the U.S. Copyright Act, and that Apache is not liable to MPLC for copyright infringement.

## II.  THE PARTIES

7.     Apache is a Delaware corporation having its principal place of business at 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056.

8.     On information and belief, MPLC is a Delaware corporation having its principal place of business at 5455 Centinela Avenue, Los Angeles, California 90066.

9.     Although MPLC has done, and continues to do, business in the Southern District of Texas, it has not designated or maintained an agent for service of process in Texas, nor does it maintain a regular place of business in Texas.  This lawsuit arises out of MPLC's business in Texas, including its legal threats made in Texas and attempts to persuade Apache to obtain a license.  Accordingly, pursuant to Federal Rule of Civil Procedure 4(h)(1)(A) and section 17.044 of the Texas Civil Practice and Remedies Code, MPLC may be served with process by service upon the Texas Secretary of State, by certified mail return receipt requested to Citations Unit, P.O. Box 12079, Austin, Texas 78711-2079.  Notice of such service can be sent to the home office of MPLC and the location of MPLC's registered agent, Salvatore Laudicina, at 5455 Centinela Avenue, Los Angeles, California 90066.

## III.  JURISDICTION AND VENUE

10.     Because this is a dispute regarding the U.S. Copyright Act and requires interpretation of this federal statute to resolve, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1338(a).  This Court also has subject matter jurisdiction over this case pursuant to

28 U.S.C. §1332(a).  Apache is a citizen of Texas, MPLC is a citizen of California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over MPLC both because MPLC's contacts with Texas are continuous and systematic and because the claims at issue in this Complaint arise from and are directly related to MPLC's contacts with this District.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and 1400(a) because, as set forth more fully below, Apache resides in this district and a substantial part of the events giving rise to Apache's claims in this matter occurred in the Southern District of Texas. As a result, a significant number of the material witnesses and relevant documents are located in the Southern District of Texas.  Venue is also proper in this Court because MPLC is subject to personal jurisdiction in the Southern District of Texas.

13.     As described above in paragraphs 3 through 6, an actual controversy within the jurisdiction of this Court exists pursuant to 28 U.S.C. §§ 2201 and 2202.

## IV.  THE FACTS

14.     Apache is an oil and gas exploration and production company that owns and operates hundreds of manned and unmanned offshore production platforms around the world.  Of relevance here, Apache operates 138 manned production platforms in the Gulf of Mexico.

15.     For the 138 manned platforms in the Gulf of Mexico, no more than five Apache employees and, in some instances, a similarly small number of contractors are employed on each platform at any one point in time.

16.     While working offshore, Apache's platforms are accessible only by boat or helicopter.  Apache's platforms are not open to the public.  The only personnel allowed access to

the platforms are Apache employees, independent contractors under contract with Apache, and government or other regulatory personnel charged with inspecting the platforms.

17.     Each of Apache's offshore manned platforms is equipped with a television and satellite programming (DirecTV) that Apache employees and contractors are permitted to watch during break periods on the platform.  This programming includes access to satellite channels that air movies.  Apache does not provide its employees with any other source—such as DVDs— for watching movies.

18.     MPLC claims to be an independent copyright agency that purports to represent a conglomerate of studios and producers and specializes in obtaining licenses for certain motion pictures.

19.     In its letters to Apache, MPLC claims that Apache has infringed, and continues to infringe, MPLC's right to publicly perform copyrighted motion pictures by providing, without a license, offshore Apache employees and contractors with DVDs and satellite programming that airs copyrighted motion pictures.  MPLC contends that this viewing, by a very limited number of Apache personnel and contractors residing on a platform in the ocean, is a "public performance."

20.     The relevant statute is the United States Copyright Act, 17 U.S.C. 101 *et seq*. Section 101 of the Copyright Act provides that a public performance is one that is conducted at either (i) a "place open to the public" or (ii) "at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered."

21.     Apache's provision of satellite programming on its offshore platforms to an insubstantial number of Apache employees and, in a few cases, contractors does not fall within either definition of  what constitutes a "public performance" in section 101 of the Copyright Act. Apache's offshore platforms are not "open to the public," as they are accessible only by boat or

helicopter, permit access to only authorized Apache employees and governmental personnel or independent contractors, and are usually located miles offshore.  Moreover, these platforms are manned (if at all) by five or fewer Apache employees and, in a few instances, a similarly small number of independent contractors.

22.     In addition, Apache provides satellite programming to its offshore employees and independent contractors pursuant to a DirecTV Commercial Viewing Agreement, effective September 2009, ("DirecTV Agreement") that licenses the very conduct that MPLC alleges is infringing behavior under the Copyright Act.

## V.  CAUSE OF ACTION FOR DECLARATORY JUDGMENT

23.     Apache incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

24.     Pursuant to 28 U.S.C. § 2201, Apache seeks a judgment declaring that, as a matter of law, its use of satellite programming on offshore platforms does not infringe MPLC's legal and equitable rights under the United States Copyright Act, 17 U.S.C. § 101 *et seq.*, and therefore that MPLC is not entitled to compensation for said use.

25.     The performances, if any, of movies that take place via satellite programming on Apache's offshore platforms are specifically authorized by Apache's Commercial Viewing Agreement with DirectTV.

26.     In addition, such performances, if any, of movies that take place via satellite programming on Apache's offshore platforms do not take place "publicly."  Apache's platforms are neither "places open to the public" nor semi-public places in which a "substantial number of persons" gather to view copyrighted movies.  If the phrase "substantial number of persons" was

intended to have any substance at all, it cannot encompass viewings, if any, by the limited number of personnel present on Apache's offshore platforms.

27.     Apache also asks the Court to declare that MPLC cannot seek relief under the Copyright Act for copyright infringement on Apache platforms located in extra-territorial waters. United States copyright laws have no extra-territorial effect, and thus infringement that takes place outside of the United States is not actionable.  This is true even if an entity *within* the United States authorizes infringing activities that occur entirely *outside* of the United States.

28.     An actual controversy of a justiciable nature exists between Apache and MPLC regarding whether Apache's provision of satellite programming to a limited number of offshore platform employees and contractors constitutes copyright infringement under the Copyright Act. Apache's use of satellite programming on remote offshore platforms does not constitute a "public performance" for which a license is required under the Copyright Act, and does not entitle MPLC to compensation.  A declaratory judgment to this effect by the Court would terminate the controversy.

## VI.  PRAYER

Plaintiff Apache seeks the following relief:

A.     Declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that Apache's use of satellite programming on offshore platforms complies with the United States Copyright Act, 17 U.S.C. § 101 *et seq.*, and that MPLC is not entitled to any compensation;

B.     An award against MPLC for Apache's costs and reasonable attorneys' fees; and

C.     Such other and further relief as the Court deems proper under the circumstances.

Dated: October 4, 2012

Respectfully submitted,

/s/ Aaron Davidson
Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
Aaron Davidson
Texas Bar No. 24007080
aaron.davidson@bakerbotts.com
Jordan H. Flournoy (*pro hac vice application to be submitted*)
Texas Bar No. 24074212
jordan.flournoy@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Ave.
Dallas, TX 75201
(214) 953-6500
(214) 953-6503 (Facsimile)

**ATTORNEYS FOR PLAINTIFF
APACHE CORPORATION**